# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**TERRY PITCHFORD**                                                    **PETITIONER**

**V.**                                                                     **NO. 4:18CV2-MPM**
**PELICIA HALL and**
**ATTORNEY GENERAL JIM HOOD**                                 **RESPONDENTS**

## MEMORANDUM AND ORDER

Before the Court are Petitioner Terry Pitchford's motions (1) for leave to file *ex parte* and under seal a motion for investigative assistance; (2) Petitioner's motion for investigative assistance; and (3) a motion to grant the motions for assistance as unopposed. Also before the Court is Respondents' motion for additional time within which to file a response to Petitioner's motions.

## I
## *Ex Parte* Request

Petitioner requests that the Court allow him to proceed *ex parte* and under seal on a request for investigative services. *See* Doc. #41.

Funding requests for expert and investigative services in death-eligible cases are governed by 18 U.S.C. § 3599, which presumes that the request will be publicly filed. *See* 18 U.S.C. § 3599(f). This Court has twice previously denied Petitioner's attempts to proceed *ex parte* on a request for investigative services, while directing Petitioner to publicly file his motion for consideration of the merits of the funding requests. Doc. #12, 17. In what the Court considers a querulous disregard for its prior rulings, Petitioner again seeks to persuade the Court that he should be allowed to proceed *ex parte* and under seal in his request for services rather than submit a publicly-filed motion. Having reviewed Petitioner's newest submission, the Court finds that his

substantive motion for funding does not contain any more sensitive, protected information than that which is included in the filed petition and its accompanying exhibits. The Court also finds that counsel's repeated efforts to seek to file for investigative assistance *ex parte* after receiving instructions from the Court are not indicative of zealous representation, but rather, are unnecessary and ineffective efforts that waste judicial resources and public funds. Therefore, the motion to proceed *ex parte* will be denied, and the Court will consider the merits of the motion as publicly filed.

## II
## Applicable Standard for Funding

This Court may authorize funds for investigative or expert services upon a showing that the services are "reasonably necessary" for a petitioner's representation. 18 U.S.C. § 3599(f). The Supreme Court has recently held:

> To be clear, a funding applicant must not be expected to prove that he will be able to win relief if given the services he seeks. But the "reasonably necessary" test requires an assessment of the likely utility of the services requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone.

*Ayestas v. Davis*, 138 S. Ct. 1080, 1094 (2018). Therefore, in considering whether services are reasonably necessary, courts are "to consider the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way." *Id.*

## III
## Petitioner's Request for Investigative Funding

**A. Fact Investigator**

Petitioner seeks to engage a fact investigator to investigate numerous federal habeas claims

of ineffective assistance of counsel, claims of juror bias and misconduct, claims regarding the credibility of witnesses and investigating officers, and the possibility that key fact witnesses may have information relevant to this case. He asks the Court to authorize fees in the amount of $12,750, plus expenses, for the services of New Orleans capital defense investigator Albert Grandoit.

Many of the claims Petitioner seeks to present in his habeas petition have not been raised in prior proceedings. It is possible that the Supreme Court rulings in *Martinez* and *Trevino* might allow Petitioner to overcome any procedural default that might otherwise prevent consideration of these claims. *See Martinez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). However, Petitioner has been appointed two habeas counsel in this case, and counsel have been permitted to claim compensation for services furnished by two additional associate attorneys. *See* Doc. #5. The Court has regularly authorized out-of-state counsel to travel to Mississippi to interview witnesses and conduct meetings with their client. *See* Docs. #10, #28, #30, #32, #35, #39, #50. Therefore, while the Court finds that some professional investigative services might be reasonably necessary, given the extensive meetings and interviews that have taken place to date, along with counsel's ongoing ability to conduct interviews while visiting Petitioner and his family members, it cannot find that such reasonably necessary future services would approach, much less exceed, the statutory cap. The Court will, therefore, authorize only a portion of the funding request.

**B. Mitigation Investigator**

Next, Petitioner seeks to engage the services of a mitigation expert who would help to uncover and develop mitigating evidence that should have been presented at the penalty phase of his capital trial, noting that counsel's preliminary investigation has revealed a family history of

3

sexual, physical, and emotional abuse, neglect, mental illness, and intellectual disability. He claims that the issue of counsel's failure to present mitigating evidence was only nominally presented in State-court proceedings, and that multiple witnesses still need to be located and interviewed over multiple sessions "to break down barriers with family members to uncover [] highly sensitive information." Doc. #42 at 16. Petitioner requests that the Court authorize $17,000 in fees, plus reasonable expenses, to secure the services of mitigation specialist Lela Hubbard.

The Court finds that it does not appear reasonably necessary to engage the separate services of a mitigation specialist. Counsel already has a relationship with Petitioner and his family members, and counsel can interview family members and obtain the necessary information to determine whether a constitutional claim exists.[1] Additionally, counsel for Petitioner concedes that this claim was presented during State-court proceedings. Because this claim was presented and adjudicated on its merits in State court, Petitioner must overcome 28 U.S.C. § 2254(d) on the record before the State court before he can introduce new evidence in these proceedings. *See Cullen v. Pinholster*, 563 U.S 170, 185 (2011). Accordingly, the Court does not find it reasonably necessary to authorizes funds for the services of a mitigation investigator.

## C. Expert Services of Trauma Psychologist

Petitioner requests that he be allowed to engage the services of clinical psychologist, Dr. Barbara Hamm. He requests authorization of $10,800, plus reasonable expenses, which will allow Dr. Hamm to interview Petitioner and his family members, consult with counsel, review relevant records, and prepare a report. Petitioner maintains that these services are necessary, as neither trial

---

[1] The Court otherwise notes that it is authorizing the services of a psychologist, who will also conduct interviews with Petitioner and his family members. *See* part III.C., *infra*. Certainly, the psychologist will review records and conduct interviews that will reveal potentially mitigating information about Petitioner's family dynamics.

4

nor post-conviction counsel engaged reasonably competent mental health experts to explore the allegedly apparent issues with his competency and mental health. Because it is "possible that investigation might enable [] [P]etitioner to carry [the] burden" of satisfying the *Martinez/Trevino* standard, the Court finds that some funding should be allotted for this purpose. *See Ayestas*, 138 S. Ct. at 1094.

## IV
## Presumptive Statutory Cap

Petitioner has requested that this Court authorize funds that exceed the $7,500 presumptive limit placed on investigative and expert services. While Petitioner argues that the statutory cap is outdated and/or should be disregarded in this particular case, Congress has not changed the statute's cap, and it must guide the Court's decision. The Court does not enjoy its role of having to be the auditor of accounts, but it recognizes its obligation to allocate federal treasury funds in good faith. To that end, the Court finds Petitioner's requests excessive. It does, however, find that some authorization of funds is reasonably necessary for expert and fact investigation services, and that due to the potentially unusual duration of such services in this case, payment in excess of the statutory cap should be certified in order to allow expert services along with some fact investigation services.

## V
## Conclusion

For the reasons set forth herein, it is **ORDERED**:

Petitioner's motion for leave to file *ex parte* and under seal [41] is **DENIED**. The Clerk is **DIRECTED** to lift the *ex parte* restriction on the motion;

Petitioner's motion for investigative assistance [42] and expert assistance is **GRANTED IN PART AND DENIED IN PART**, in that Petitioner is authorized a total of $15,000 for these

services, subject to final approval from the Chief Judge of the United States Court of Appeals for the Fifth Circuit. All other funding requests are **DENIED**;

Petitioner's motion to grant previously-filed motions as unopposed [44] and Respondents' motion for an extension of time [45] are **DENIED**; and

The Clerk of Court shall forward this Order to the Chief Judge of the United States Court of Appeals for the Fifth Circuit for his consideration.

**THIS** 26th day of November, 2018.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE