## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

TERRY PITCHFORD                                                    PETITIONER

v.                                               Civil Action No.: 4:18-cv-00002-MPM
                                                        CAPITAL HABEAS CORPUS

BURL CAIN, MDOC Commissioner;
LYNN FITCH, Attorney General for the
State of Mississippi                                              RESPONDENTS

## RESPONDENTS' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 207) AND CROSS-MOTION FOR SUMMARY JUDGMENT

Respondents, MDOC Commissioner Burl Cain and Attorney General Lynn Fitch, through undersigned counsel, file this Memorandum in Support of their Response in Opposition to Petitioner's Motion for Partial Summary Judgment (Doc. 207) and Cross-Motion for Summary Judgment.

Terry Pitchford ("Petitioner") erroneously claims that he is entitled to summary judgment under *Batson v. Kentucky,* 476 U.S. 79 (1986). On the contrary, *Respondents* are entitled to summary judgment on the *Batson* claim because Petitioner cannot rebut the Antiterrorism and Effective Death Penalty Act's (AEDPA) presumption of correctness by clear and convincing evidence. *See Smith v. Cockrell,* 311 F. 3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004). The Mississippi Supreme Court considered—and rejected—the arguments Petitioner makes in his Motion for Partial Summary Judgment. In doing so, the Mississippi Supreme Court correctly applied *Batson* and reasonably accepted the State's race-neutral reasons for striking the challenged jurors. *See Pitchford v. State,* 45 So. 3d 216, 227–28 (Miss. 2010).

1

Federal Rule of Civil Procedure 56 applies to habeas corpus cases, but 28 U.S.C. § 2254(d)'s deferential standard of review also applies. *See Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002). The Mississippi Supreme Court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law and did not result in a decision based on an unreasonable determination of the facts given the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). This Court should therefore deny Petitioner's Motion for Partial Summary Judgment (Doc. 207), deny Petitioner a writ of habeas corpus, deny Petitioner's request for oral argument, and grant summary judgment in Respondents' favor on the *Batson* claim.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Petitioner murdered Reuben Britt during a botched armed robbery in 2004. *Pitchford,* 45 So. 3d at 222–23. At Petitioner's trial in 2006, there were 126 venire members at the start of voir dire—forty Black, eighty-four white, one Hispanic, and one who did not provide race information. *Id.* at 223. After the trial judge excused thirty potential jurors for statutory reasons or reasons unrelated to the case, the jury pool consisted of ninety-six members. *Id.* Thirty-five were Black and sixty-one were white. *Id.* After voir dire, the trial court excused fifty-two potential jurors for cause and three for other reasons. *Id.* At that point, thirty-six white potential jurors and five Black potential jurors made up the venire. *Id.* The attorneys then exercised strikes "only on the twelve lowest-numbers members of the venire," and each time someone was stricken, the "next lowest-numbered juror joined the twelve potential

jurors subject to peremptory strikes." *Id*. The State used seven strikes and Petitioner used twelve, which resulted in thirty-one potential jurors subject to peremptory strikes by the attorneys. *Id*. Of the final pool of thirty-one potential jurors subject to peremptory strikes, Petitioner struck twelve white venire members, leaving nineteen potential jurors. *Id*. Fourteen of those were white and five were Black. *Id*. The State used only seven of its twelve peremptory strikes, striking three white and four Black potential jurors.

On appeal, Petitioner argued that "the State exercised its peremptory strikes in a racially discriminatory manner" under *Batson*. *Id*. at 224. At trial, counsel asserted that Grenada County was made up of 40% Black individuals but provided no evidence to support this assertion. *Id*. at 225. The Mississippi Supreme Court held that it was nonetheless "persuaded that the record supports the trial court's finding of a prima facie showing of discrimination." *Id*. The venire subject to the State's peremptory strikes included fourteen white individuals (74%) and five Black individuals (26%). *Id*. The State then struck four of the five Black individuals, or 57%. The "difference in these percentages is not so great as to constitute, as a matter of law, a prima facie finding of discrimination," but it was sufficient for a trial judge to find a prima facie showing. *Id*. at 226.

After the trial court found a prima facie showing of discrimination, it required the prosecutor, Doug Evans, to provide race-neutral reasons for the strikes. *Id*.

### Carlos Ward

Evans said he struck Ward because he had no opinion on the death penalty, had a two-year-old child, had never been married, and had many speeding violations. *Id.* According to Evans, Ward was approximately the same age as Petitioner, and they had many similarities. *Id.* "In [Evans'] opinion he will not be able to not be thinking about these issues, especially on the second phase." *Id.* The Mississippi Supreme Court affirmed the trial court's acceptance of Evans' proffered race-neutral reasons. Citing *Lockett v. State,* 517 So. 2d 1346, 1356–57 (Miss. 1987), the Mississippi Supreme Court held that a list of "illustrative examples" of race-neutral reasons is sufficient. *Id.*

### Linda Ruth Lee

Evans stated that he struck Lee because she was fifteen minutes late and according to the police captain, she "has mental problems." *Id.* Cops had been dispatched to her home multiple times. *Id.* The Mississippi Supreme Court held that "a juror [who] 'obviously has mental problems' was clearly a race neutral reason." *Id.* It affirmed the trial court's acceptance of Evans' proffered race-neutral reason. *Id.*

### Christopher Lamont Tillmon

Evans struck Tillmon because "he has a brother who has been convicted of manslaughter. And considering that this is a murder case, I don't want anyone on the jury that has relatives convicted of similar offenses." *Id.* at 227. The Mississippi Supreme Court held that this was an acceptable race-neutral reason because "a juror's (or family member's) criminal history [is] a race-neutral reason for exercising a peremptory challenge." *Id.*

4

**Patricia Anne Tidwell**

Evans struck Tidwell because her brother was convicted of sexual battery in the same court and, at the time of Petitioner's trial, was "charged in a shooting case that is a pending case here in Grenada." *Id.* Evans also stated that Tidwell was "a known drug user" according to police officers. *Id.* The Mississippi Supreme Court affirmed the trial court's acceptance of Evans' proffered race-neutral reason for striking Tidwell. *Id*

The Mississippi Supreme Court rejected Petitioner's argument that Evans' race-neutral reasons were a pretext for discrimination. *Id.* at 227–28. Petitioner did not rebut the State's race-neutral reasons in the trial court. *Id.* The Court "will not now fault the trial judge with failing to discern whether the State's race-neutral reasons were overcome by rebuttal evidence and argument never presented," so it "will not entertain those arguments now." *Id.* It therefore affirmed the trial court's holding that no *Batson* violated occurred. *Id.*

## ARGUMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 generally applies in habeas proceedings but "*only to the extent that it does not conflict with the habeas rules.*" *Smith,* 311 F.3d at 668 (emphasis added). So the presumption of correctness in § 2254(e)(1) *overrides* the ordinary summary judgment standard. *Id.* Smith's presumption must be applied given the backward-looking record-based nature of

5

habeas review, AEDPA's highly deferential standards of review, and the already-established facts that appear in the state-court record. Petitioner "cannot rely on summary judgment principles to escape his burden of showing that he is in custody in violation of the Constitution of the United States." Brian R. Means, *Federal Habeas Manual* § 8:36 (2023). Consequently, unless Petitioner can "rebut the presumption of correctness by clear and convincing evidence as to the state court's finding of fact, they must be accepted as correct." *Smith,* 311 F.3d at 668. And this Court can only consider the facts presented to the Mississippi Supreme Court in deciding this issue under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## I. Section 2254(d) limits the Court's review to the record before the Mississippi Supreme Court.

AEDPA review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. Further, "[i]t follows that the record under review is limited to the record in existence at the same time *i.e.,* the record before the state court." *Id.* at 182. And "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 185. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* So the Court "cannot consider the contents of outside discovery in determining if the decision of a state court was objectively unreasonable under § 2254(d)(1)." Brian R. Means, *Postconviction Remedies* § 20:12 (2022).

Stated simply: "A federal court's review of a claim adjudicated in state court is circumscribed in two ways. First, the federal court may not consider any evidence

beyond the state court record." *Nelson v. Lumpkin,* 72 F.4th 649, 656 (5th Cir. 2023) (citing *Pinholster,* 563 U.S. at 180–81). And second, "the state prisoner must show that the state court's decision was contrary to, or involved an unreasonable application of, law clearly established by the Supreme Court…or that the decision was based on an unreasonable determination of the facts in light of the state court record.…" *Id.* (internal quotes omitted).

The Mississippi Supreme Court adjudicated Petitioner's *Batson* claim on the merits. *Pitchford,* 45 So. 3d at 224–31. This Court's review under AEDPA is limited to the state court record. Any discovery evidence Petitioner relies on—i.e., deposition transcripts and annotated notes—has "no bearing on § 2254(d)(1) review." *See Evans v. Davis,* 875 F.3d 210, 217 n.5 (5th Cir. 2017). Petitioner cannot overcome § 2254(d) on the record before the state court.

## II.     Respondents are entitled to judgment as a matter of law based on the state-court record.

AEDPA "restricts a federal court's ability to grant habeas relief after an adjudication on the merits in state court to only two grounds." *Chambelrin v. Fisher,* 885 F. 3d 832, 837 (5th Cir. 2018). Under § 2254(d)(1), the Court may grant habeas relief if the State court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Chamberlin,* 885 F. 3d at 837 (quotation omitted).

And under § 2254(d)(2), the Court may grant relief if the State court's adjudication on the merits "resulted in a decision that was based an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "State-court factual findings…are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Chamberlin,* 885 F. 3d at 837 (quotation omitted).

Petitioner "faces a formidable twofold hurdle" here. *Id.* at 838. He must "overcome both the burden placed on [him] by the *Batson* framework and the substantial deference AEDPA requires [the Court] to give the state court's factual findings." *Id.* Petitioner can overcome neither burden. The Mississippi Supreme Court faithfully applied the *Batson* framework. It did not misapply the governing legal principles by doing so. And its decision was not based on an unreasonable determination of the facts. Here, there is no genuine issue as to any material fact. To survive summary dismissal, Petitioner must *show* a genuine issue exists and that he can overcome AEDPA's relitigation bar and establish a *Batson* violation. He can do neither. That Petitioner is not entitled to relief under *Batson* or AEDPA is clear from the state-court record. This Court should therefore grant summary judgment in Respondents' favor because they are entitled to judgment as a matter of law.

### A. The Mississippi Supreme Court's decision was consistent with, and was based on a reasonable application of, *Batson's* holding.

#### 1. The *Batson* framework.

In *Batson,* the United States Supreme Court delineated a three-step framework for determining whether the prosecution engaged in "invidious racial

discrimination during jury selection." *Chamberlin,* 885 F. 3d at 837. The "party making the claim of purposeful discrimination bears the "ultimate burden of persuasion" throughout all three steps. *Rice v. Collins,* 546 U.S. 333, 338 (2006).

First, the claimant must make a prima facie showing that "the prosecutor exercised a peremptory challenge on the basis of race." *Id.* If a prima facie showing is made, "the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question."  *Id.* The prosecutor must present a "comprehensible reason" for the strike, but "the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices." *Id.* (quotation omitted). Third, the court "must determine whether the [claimant] has carried his burden of proving purposeful discrimination." *Id.* In other words, the trial court must determine whether the prosecutor's race-neutral reasons are pretext for discrimination. *Batson,* 476 U.S. at 97–98. This step "involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion…rests with…the opponent of the strike." *Rice,* 546 U.S. at 338 (quotation omitted).

### 2. The Mississippi Supreme Court correctly applied the *Batson* framework.

AEDPA "imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court. *Burt v. Titlow*, 571 U.S. 12, 18–19 (2013) (quoting 28 U.S.C. § 2254(d)(1)). The Supreme Court recently

noted that "[d]eciding whether a state court's decision 'involved' an unreasonable application of federal law…requires the federal habeas court to 'train its attention to the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" *Wilson v. Sellers,* 138 S. Ct. 1188, 1191–92 (2018) (quoting *Hittson v. Chatman,* 576 U.S. 1028, 1028 (2015) (Ginsburg, J., concurring in denial of certiorari)). Then, the Court must give appropriate deference to the state court's decision. *Id.* (citing *Harrington v. Richter,* 562 U.S. 86, 101–02 (2011)). This is a straightforward process when "the last state court to decide the prisoner's federal claim explains its decision on the merits in a reasoned opinion," in which case the federal habeas court "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* at 1192; *see*, *e.g*, *Porter v. McCollum,* 558 U.S. 30, 39–44 (2009) (per curiam); *Rompilla v. Beard,* 545 U.S. 374, 388–92 (2005); *Wiggins v. Smith,* 539 U.S. 510, 523–38 (2003).

A state court's decision on the merits is contrary to clearly established federal law only "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002). A federal habeas court cannot grant relief simply because it believes the state court incorrectly decided the case; relief may be granted only if the state court's decision was unreasonable. *Williams,* 529 U.S. at 411.

Here, the Court's job is easy. The Mississippi Supreme Court properly applied the *Batson* framework in a well-reasoned opinion. A review of the specific reasons in

10

its opinion shows the Mississippi Supreme Court's adjudication was based on a reasonable application of *Batson*. Thus, the Court should defer to those reasons and grant summary judgment to Respondents. Specifically, for each of the four potential jurors Pitchford claims were stricken based on race, the Mississippi Supreme Court correctly applied the three-step *Batson* analysis.

### i. Step One—Prima Facie Showing

First, the Mississippi Supreme Court concluded that Petitioner made a prima facie showing of racial discrimination. *Pitchford,* 45 So. 3d at 225. Although Petitioner did not present the trial court with any evidence of the racial makeup of Grenada County, the court accepted his argument that the State's use of peremptory strikes to strike four of five Black potential jurors, leaving only one Black juror on the jury of fourteen (twelve jurors and two alternates), was "incompatible with the fact that, in 2006, African-Americans made up approximately forty percent of Grenada County's population." *Id.* The State "used fifty-seven percent of its peremptory strikes (four out of seven) to remove African-Americans from a venire comprised of twenty-six percent African-American and seventy-four percent white." *Id.* at 225–26. The Mississippi Supreme Court noted that the "difference in these percentages is not so great as to constitute, as a matter of law, a prima facie finding of discrimination," but it was a sufficient showing for the trial court, which was "on the ground and able to observe the voir dire process, and in the exercise of sound discretion—to so find." *Id.* at 226.

11

### ii.    Step Two—Race-Neutral Reasons

In step two, the Mississippi Supreme Court affirmed the trial court's acceptance of Evans' proffered race-neutral reasons for striking each of the four challenged jurors.

**Ward:** Evans told the trial court that he struck Ward because he had no opinion on the death penalty, he had a two-year-old child, he had never been married, he had many speeding violations, and he was about the same age as Petitioner. *Id.*; (Doc. 208 Ex. 1 at 325–26). Evans feared that Ward would think about his similarities to Petitioner and would not be a good juror because of it. *Id.* Citing *Lockett v. State,* 517 So. 2d 1346 (Miss. 1987), the Mississippi Supreme Court held that Evans provided acceptable race-neutral reasons for striking Ward. *Id.*

**Lee:** Evans struck Lee because she was fifteen minutes late and according to a police captain, she had mental problems. *Id.*; (Doc. 207 Ex. 1 at 324–25). The Mississippi Supreme Court held that striking a juror for having mental problems is "clearly a race neutral reason." *Id.*

**Tillmon:** Evans struck Tillmon because his brother was convicted of manslaughter and "considering this is a murder case, [Evans did not] want anyone on the jury that has relatives convicted of similar offenses." *Id.* at 227; (Doc. 207 Ex. 1 at 325). Citing *Lynch v. State,* 877 So. 2d 1254, 1271–72 (Miss. 2004), the Mississippi Supreme Court held that a family member's criminal history can be a race-neutral reason for exercising a peremptory strike against a potential juror. *Id.*

12

**Tidwell:** Evans struck Tidwell because her brother was previously convicted of sexual battery and had a pending shooting case in Grenada, and she was a known drug user. *Id.*; (Doc. 207 Ex. 1 at 325). The Mississippi Supreme Court held that these were acceptable race-neutral reasons for striking Tidwell.

The Mississippi Supreme Court's holding that Evans provided approved race-neutral reasons for striking Ward, Lee, Tillmon, and Tidwell was not contrary to clearly established Federal law. The Court can only grant relief if it was *unreasonable* to credit Evans' race-neutral explanations for striking these jurors—and it was not unreasonable for the Mississippi Supreme Court to credit Evans' race-neutral reasons here.

The United States Supreme Court has held that "[i]n evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reason for the peremptory strikes are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez v. New York,* 500 U.S. 352, 359 (1991). "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact…proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* (citation omitted). So "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Id.* at 360. "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation" and unless "a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.*

13

Evans' reasons for striking Ward, Lee, Tillmon, and Tidwell were clearly race-neutral under the United States Supreme Court's standard. He struck Ward because he was too similar to Petitioner, Lee because she was late and because she was mentally unstable, and Tillmon and Tidwell because their family members had been convicted of crimes similar to the one Petitioner was on trial for. The Mississippi Supreme Court's decision to accept Evans' reasons as race-neutral was not contrary to clearly established Federal law.

### iii. Step Three—Pretext Determination

Petitioner makes much of the fact that the Mississippi Supreme Court faulted him for not offering the trial court any evidence or arguments to support his claim that Evans' proffered race-neutral reasons were pretext. (Doc. 208 at 11–13). He claims that this amounted to the Mississippi Supreme Court failing to apply step three of the *Batson* analysis. (Doc. 208 at 11–13). But the Mississippi Supreme Court's decision on step three of the *Batson* analysis was not contrary to clearly established Federal law. Petitioner had the burden to prove purposeful discrimination in the trial court. *Hernandez,* 500 U.S. at 359. The court "must determine whether the [claimant] has carried his burden of proving purposeful discrimination." *Id.* In other words, the court must determine whether the prosecutor's race-neutral reasons were pretext. *Batson,* 476 U.S. at 97–98. This step "involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion…rests with…the opponent of the strike." *Rice,* 546 U.S. at 338 (quotation omitted). The fault for Petitioner's failure to

14

carry his burden to prove purposeful discrimination lies with him—not the Mississippi Supreme Court.

Petitioner's reliance on *Flowers v. Mississippi,* 139 S. Ct. 2228 (2019) is a red herring. (Doc. 208 at 8–11). *Flowers* was not decided under AEDPA, so Flowers did not face the same two-step burden as Petitioner. *See Harrington,* 562 U.S. 86 at 101 (cautioning habeas courts to delineate between direct appeal and habeas standards of review). Unlike Flowers, Petitioner must prove by clear and convincing evidence that the Mississippi Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). To do that, he must also satisfy *Batson.* And in determining whether the Mississippi Supreme Court's decision was contrary to clearly established Federal law, the Court looks only to "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quotation omitted). Because *Flowers* was decided after the Mississippi Supreme Court's decision on the merits of Petitioner's *Batson* claim, it does not apply for purposes of this Court's AEDPA analysis. But it would not matter even if it did because the Supreme Court broke "no new legal ground" and "simply enforce[d] and reinforce[d] *Batson*…." *Flowers,* 139 S.Ct. at 2235.

Petitioner seems to argue that the Mississippi Supreme Court should have engaged in a comparative juror analysis to determine whether Evans' race-neutral reasons for striking Ward, Lee, Tillmon, and Tidwell were pretextual. (Doc. 208 at 15–22). But the Mississippi Supreme Court was not required to engage in a

15

comparative juror analysis—especially when Petitioner did not present this argument to the trial court. In *Miller-El v. Dretke,* 545 U.S. 231 (2005), the United States Supreme Court held that the third *Batson* step requires the trial court to determine whether, on the record, the prosecution's explanation for the juror strike is "unworthy of credence." *Id.* at 241. But *Miller-El* did not clearly establish a *requirement* that a state court conduct a comparative juror analysis at all. *See Chamberlin,* 885 F. 3d at 838 (citing *Miller El,* 545 U.S. at 265–66). Instead, the *Miller-El* court used juror comparison as "one factor in considering the totality of the pretrial record." *Id.*

Here, the Mississippi Supreme Court's decision was not contrary to Supreme Court precedent. In determining pretext, "implausible or fantastic justifications may (and probably will) be found to be pretext for purposeful discrimination." *Purkett v. Elm,* 514 U.S. 765, 768 (1995). Courts do not assess "whether counsel's reason is suspect, or weak, or irrational" but "whether counsel is telling the truth in his or her assertion that the challenge is not race-based," so the court should consider "the totality of relevant facts." *Hernandez,* 500 U.S. at 363. Ultimately, the trial court considered Petitioner's arguments and Evans' race-neutral reasons for striking the challenged jurors and found "there to be no *Batson* violation." (Doc. 207 Ex. 1 at 166). Clearly the trial court accepted Evans' race neutral reasons for striking Ward, Lee, Tillmon, and Tidwell, and found no pretext. The Mississippi Supreme Court affirmed that decision, correctly applying the three-step framework established by *Batson*. There is no evidence that the trial court did not consider the totality of the circumstances in

accepting Evans' race neutral reasons and holding he did not violate *Batson*. *See Harrington,* 562 U.S. at 98.

And even Petitioner's comparative juror analysis does not support his *Batson* claim. The state-court record belies his argument that Ward, Lee, Tillmon, and Tidwell were subject to disparate treatment. (Doc. 208 at 14–15). Petitioner uses another red herring to support his argument that these four jurors were treated disparately, citing bare statistics to support his argument. (Doc. 208 at 14). But "bare statistics" are not the "be-all and end-all." *Chamberlin,* 885 F. 3d at 840 (quoting *Miller-El,* 545 U.S. at 241). And comparing jurors side-by-side supports the trial court's and the Mississippi Supreme Court's holding that no *Batson* violation occurred. *See* Section II.B., *infra.*

The Mississippi Supreme Court's application of *Batson* was not contrary to, or an unreasonable application of, clearly established Federal law. It correctly applied all three steps and determined that no *Batson* violation occurred. Respondents are therefore entitled to summary judgment on the *Batson* claim.

### B. The Mississippi Supreme Court's determination of the facts aligned with the state-court record.

Petitioner argues that the Mississippi Supreme Court's finding that no *Batson* violation occurred resulted from an unreasonable determination of the facts. (Doc. 208 at 13). According to him, the facts indicate that Evans' race-neutral reasons for striking Ward, Lee, Tillmon, and Tidwell were pretextual, and the state court's acceptance of Evans' race-neutral reason resulted from its unreasonable

determination of the facts. (Doc. 208 at 13–14). This could not be further from the truth.

For Petitioner to be entitled to relief under § 2254(d)(2), the Court "must find the state-court conclusion an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Rice*, 546 U.S. at 338 (citing 28 U.S.C. § 2254(d)(2)). "Thus, a federal habeas court can only grant [Petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Id.* And state-court factual findings are presumed correct, so "the petitioner has the burden of rebutting that presumption by clear and convincing evidence." *Id.* at 338–39 (citations omitted). This Petitioner cannot do. It was not unreasonable for the Mississippi Supreme Court—and the trial court—to credit Evans' race-neutral reasons for striking Ward, Lee, Tillmon, and Tidwell.

### Carlos Ward

Petitioner argues that "the pretextual quality of the stated reasons [for striking Ward] is plain when assessed with reference to numerous white venire members who possessed at least one of the characteristics the State invoked in justifying his strike of Mr. Ward." (Doc. 208 at 16). But Petitioner ignores the obvious—Evans struck Ward because he possessed *all* the characteristics (no opinion on the death penalty, numerous speeding tickets, age, marital status, father)—not just one of them. So comparing Ward to white jurors possessing less than all those qualities is a fallacy. In fact, none of the white jurors Petitioner cites in support of his argument possessed more than two of the five characteristics Evans proffered as race-neutral reasons for

18

striking Ward. (Doc. 208 at 16 n. 8). The collective effect of all five of these characteristics are what made Evans exercise a peremptory strike on Ward. (See Doc. 207 Ex. 1 at 325–26).

The trial court and the Mississippi Supreme Court correctly determined that Evans provided acceptable race-neutral reasons for striking Ward and implicitly found that these reasons were not pretextual. It was not unreasonable for the state court to accept Evans' race-neutral reasons for striking Ward.

**<u>Linda Ruth Lee</u>**

According to Petitioner, Evans struck Lee for being fifteen minutes late, but he did not strike other jurors who were also late. (Doc. 208 at 19). But Petitioner identifies no other jurors who were late. And the record shows that only Lee was late returning from lunch during voir dire. (Doc. 207 Ex. 1 at 239). The bailiff informed the trial court that Lee had not returned from lunch on time. (Doc. 207 Ex. 1 at 239). After waiting a few minutes for Lee to return, the trial court proceeded without her, informing the parties: "Miss Lee will be dealt with accordingly. I think if everybody else could be back on time she could have as well." (Doc. 207 Ex. 1 at 239). This directly contradicts Petitioner's argument that other jurors were late as well—the trial court specifically noted that "everybody else" was punctual. (Doc. 207 Ex. 1 at 239). When Lee finally returned from lunch, she told the trial court her tardiness was the result having to walk. (Doc. 207 Ex. 1 at 239). So Petitioner's claim that Evans' race-neutral reason for striking Lee was pretextual holds no water. She was late when no other juror was. And this was an acceptable race-neutral reason for striking

Lee. Her tardiness could delay the trial if she were seated as a juror and it demonstrated a general lack of responsibility that suggested to Evans that she would not be a good juror.

Evans also struck Lee because she had a history of mental illness. (Doc. 207 Ex. 1 at 324–25). Petitioner now faults Evans for not proving this to be true, but he offers no law in support of his conclusion. According to Petitioner, "the State did not opt to question, nor did the court instruct the District Attorney to voir dire, the panel collectively or Ms. Lee, or any other venire member, individually with regard to mental illness or health issues." (Doc. 208 at 18–19). But neither did he. And he did not challenge Evans' statement that police officers told him they had been to Lee's home multiple times and she "obviously has mental problems." (Doc. 207 Ex. 1 at 324–25). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice,* 546 U.S. at 338. Petitioner did not carry his burden to prove that Evans' race-neutral reasons for striking Lee were pretextual.

The trial court and the Mississippi Supreme Court correctly determined that Evans provided race-neutral reasons for striking Lee and implicitly found that these reasons were not pretextual. It was not unreasonable for the state court to accept Evans' race-neutral reasons for striking Lee.

## **Christopher Tillmon**

Petitioner claims Evans struck Tillmon even though he possessed characteristics that made him a favorable juror to the State, indicating that Evans'

20

reasons for striking him were pretextual. (Doc. 208 at 20). But Evans struck Tillmon because his brother was convicted of manslaughter—and this was a murder case. (Doc. 207 Ex. 1 at 325). The Mississippi Supreme Court held that a juror's family member's criminal history is a race-neutral reason for exercising a peremptory strike. *Pitchford,* 45 So. 3d at 227. Petitioner cites two "similarly situated" jurors who were not stricken (Doc. 208 at 20), but neither of those jurors had a family member convicted of homicide. Striking a potential juror whose close relative was convicted of a crime like the one Petitioner was being tried for is clearly a race-neutral reason.

The trial court and the Mississippi Supreme Court correctly determined that Evans provided race-neutral reasons for striking Tillmon and implicitly found that these reasons were not pretextual. It was not unreasonable for the state court to accept Evans' race-neutral reasons for striking Tillmon.

### Patricia Anne Tidwell

Finally, Petitioner claims that the Mississippi Supreme Court unreasonably determined the facts in accepting Evans' race-neutral reason for striking Tidwell because Evans "failed to make any record substantiating that Ms. Tidwell was 'a known drug user.'" (Doc. 208 at 21). But Evans struck her not only because she was a known drug user, but because her brother was charged in a shooting case pending in Grenada at the time. (Doc. 207 Ex. 1 at 325). Petitioner was accused of shooting Britt to death—so clearly striking Tidwell because her brother was charged with shooting someone was a race-neutral reason for striking her. And although Petitioner claims that Evans did not make a record about Tidwell's status as a known drug user

(Doc. 208 at 21), neither did he. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice,* 546 U.S. at 338. Petitioner did not carry his burden to prove that Evans' race-neutral reasons for striking Tidwell were pretextual.

The trial court and the Mississippi Supreme Court correctly determined that Evans provided race-neutral reasons for striking Tidwell and implicitly found that these reasons were not pretextual. It was not unreasonable for the state court to accept Evans' race-neutral reasons for striking Tidwell.

## CONCLUSION

Respondents are entitled to summary judgment on Petitioner's *Batson* claim. There is no genuine issue as to whether Petitioner can carry his heavy burdens under AEDPA and *Batson* because the Mississippi Supreme Court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law and did not result in a decision based on an unreasonable determination of the facts given the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The Mississippi Supreme Court correctly applied *Batson's* framework in rejecting Petitioner's claim that Evans violated *Batson* in striking Ward, Lee, Tillmon, and Tidwell. And its acceptance of Evans' race-neutral reasons for striking these four jurors was not based on an unreasonable determination of the facts. This Court should therefore deny Petitioner's Motion for Partial Summary Judgment (Doc. 207), deny Petitioner a writ of habeas corpus, deny Petitioner's request for oral argument, and grant summary judgment in Respondents' favor.

Respectfully submitted, this 3rd day of August, 2023.

**BURL CAIN, MDOC Commissioner;
LYNN FITCH, Attorney General for the
State of Mississippi**


*/s/ Allison Kay Hartman*
ALLISON K. HARTMAN (MSB # 105083)
Special Assistant Attorney General
P.O. Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3680
Email: Allison.Hartman@ago.ms.gov

*Counsel for Respondents*

23

## CERTIFICATE OF SERVICE

I, Allison Kay Hartman, certify that I electronically filed Respondents'
Memorandum in Support of their Response in Opposition to Petitioner's Motion for
Partial Summary Judgment (Doc. 207) and Cross-Motion for Summary Judgment
using the ECF system, which sent notification to the following:

> Jason Scott Gilbert
> WATKINS & EAGER
> 400 East Capitol Street
> Jackson, MS 39201
> sgilbert@watkinseager.com
>
> Joseph Perkovich
> PHILLIPS BLACK, INC.
> P.O. Box 4544
> New York, NY 10163
> j.perkovich@phillipsblack.org
>
> Jenny Osborne
> PHILLIPS BLACK, INC.
> 1901 S. 9th Street, Suite 608
> Philadelphia, PA 19148
> j.osborne@phillipsblack.org

This 3rd day of August, 2023.

*/s/ Allison Kay Hartman*
ALLISON KAY HARTMAN
