UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | | |
|---|---|---|
| **TERRY PITCHFORD**, | : | |
| *Petitioner*, | : | |
| | : | |
| v. | : | NO. 4:18-cv-0002-MPM |
| | : | |
| **BURL CAIN**, Commissioner, | : | **Capital Habeas Corpus** |
| Mississippi Dept. of Corrections, and | : | |
| **LYNN FITCH**, Attorney General | : | |
| of the State of Mississippi | : | |
| *Respondents*. | : | |

### REBUTTAL TO RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.     INTRODUCTION.**

The Response in Opposition ignores vital elements of Petitioner's Motion and mangles *Batson*'s three-step inquiry for the sake of defending the District Attorney's discriminatory use of peremptory challenges in comprising a jury of eleven whites and one Black juror. The present Motion establishes not merely that the state supreme court erred in failing to grant *Batson* relief, it demonstrates the state court's unreasonable application of the *Batson* line of cases and determination of related facts.

Respondents note that, in addition to applying the standards in 28 U.S.C. § 2254(d)(1) and (2), "the federal court may not consider any evidence beyond the state court record." Doc. 212 at 6-7 (quoting *Nelson v. Lumpkin*, 72 F.4th 649, 656 (5th Cir. 2023). However, the present Motion seeks only for this Court to do just what *Nelson* requires: to assess under AEDPA the state supreme court's application

1

of the constitutional law under *Batson* (Doc. 208 at 11-13), and its related fact findings (*id*. 13-22).

Respondents assert that "[a]ny discovery evidence Petitioner relies on—i.e., deposition transcripts and annotated notes"—does not bear upon this motion. Doc. 212 at 7. But Petitioner has not placed in question whether the Court was to consider any such evidence in deciding the present Motion, which "pursues relief via partial summary judgment under *Batson*'s application to the existing state court record." Doc. 208 at 2.

While the information adduced under the Rule 6 discovery in these proceedings amasses yet more evidence of the untruthfulness of the District Attorney's proffered race-neutral rationales for striking four of five Black venire members and the prosecution's discriminatory intent animating these strikes (*id*. at 2 n.1), that material is not implicated in this Motion, as obviously the disclosures and depositions in these federal proceedings are not part of the state court record and would become part of that record only upon subsequent exhaustion in those courts.

## II. ARGUMENT

### A. The Record Establishes Violations of *Batson* and its Unreasonable Application and Corresponding Unreasonable Findings of Fact.

Respondents belabor the deference accorded state court judgments under AEDPA. Doc. 212 at 2, 5-6, 8, 9, and 10. The Motion fully treats the nature of habeas corpus review and simultaneously points out that, while AEDPA surely imposes deferential review upon Article III courts, this "does not by definition

preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). With respect to *Batson* claims, *Miller-El v. Dretke* demystifies the application of AEDPA's clear and convincing standard for rebutting the state court's fact findings under § 2254(d)(2) and (e)(1): "The standard is demanding but not insatiable." 545 U.S. 231, 240 (2005). The majority opinion of the Mississippi Supreme Court at bar violated *Batson*, as that court's Presiding Judge explained in dissent. *Pitchford v. State*, 45 So.3d 216, 267 (Miss. 2010). What is more, as Petitioner's Motion has set forth, it did so via the unreasonable application of the *Batson* authorities and unreasonable factual determinations, thereby violating both (d)(1) and (d)(2) of § 2254.

**B. Respondents Mischaracterize the Burden Shifting under *Batson* and Obscure its Proper Application to this Record.**

Respondents argue that language in *Rice v. Collins* that "the opponent of the strike" bears "the ultimate burden of persuasion," 546 U.S. 333, 338 (2006), entails that any defendant/petitioner carries the burden of proof *"throughout all three steps"* of the *Batson* inquiry. Doc. 212 at 8-9 (emphasis added). This is patently incorrect and Respondents' repeated reliance on that conceptualization (*id.* at 8-9, 9, and 20), enlarges *Rice*'s proposition to collapse the discrete inquiries under *Batson*'s steps two and three into a single, faulty evaluation. Respondents' analysis aims to obscure the points in the Motion establishing the state courts' unreasonable application of *Batson* in relation to both the step two and step three levels of its analysis.

*Batson* first requires the defendant/petitioner "to make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives

3

rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94 (citing *Washington v. Davis*, 426 U.S. 229 239-42 (1976)). The Supreme Court has observed that, "In *Batson*, we held that determining whether a prima facie case has been established requires consideration of all relevant circumstances, including whether there has been a pattern of strikes against members of a particular race." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631 (1991) (citing *Batson*, 476 U.S. at 96-97).

When, as is the case here, the defendant/petitioner has satisfied *Batson*'s first step, the burden explicitly shifts to the prosecution. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 at 97.

Regarding that second *Batson* step, *Rice* quoted *Purkett v. Elm*, 514 U.S. 765, 768 (1995)), wherein the Court explained that *Batson* requires the trial court to refrain from discrediting the prosecutor's proffered race-neutral reason as, for instance, "silly," and, instead, merely to determine, as reasoned in *Hernandez v. New York*, "whether counsel is telling the truth in his or her assertion that the challenge is not race-based." 500 U.S. 352, 363 (1991) (quoted, Doc. 212 at 16).

For present purposes, this matter of truthfulness is essentially *the point* of *Batson*'s step two and, critically, it is without question the State's burden to evince justification for finding the prosecutor's purported rationale non-discriminatory. Respondents correctly point to *Hernandez* for support that this Court must be concerned with "the facial validity of the prosecutor's explanation," (Doc. 212 at 13),

4

further recognizing that in contemplating the facial validity of the explanation, this Court "should consider 'the totality of relevant facts[,]'" Doc. 212 at 16 (quoting *Hernandez*, 500 U.S. at 363). Petitioner agrees with both points.

The totality of relevant facts in Mr. Pitchford's 2006 trial includes the record of the District Attorney's racial discrimination established in the same judicial district two years prior, in the third trial of Curtis Flowers. *Flowers v. State*, 947 So. 2d 910, 935 (Miss. 2007) ("The instant case presents us with as strong a prima facie case of racial discrimination as we have ever seen in the context of a *Batson* challenge."). As examined in the Motion, the various rationales the trial court reflexively deemed to be genuine race-neutral reasons do not withstand scrutiny. At bottom, *Purkett* teaches that a finding of pretext stands upon "whether counsel is telling the truth in his or her assertion that the challenge is not race-based." Doc. 212 at 16 (quoting *Purkett*, 514 U.S. at 768).

On the face of the State's explanations at bar, when considered with the entire voir dire record and the totality of the circumstances of this District Attorney's prosecution of Petitioner and his office's practices apart from Petitioner's case, the prosecutor's commitment to purposeful discrimination in jury selection is unflagging. However, the Mississippi Supreme Court's *Batson* decision in *Pitchford* is not merely erroneous in failing to acknowledge the discriminatory behavior, it results from the unreasonable application of *Batson* to both steps two and three of the analysis. By conflating these two steps, Respondents apply the wrong analysis

to the state supreme court's decision on the trial court's unfounded denial of the four venire challenges in question.

At bottom, Respondents quotation of *Rice* that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike[,]" 546 U.S. at 338 (quoting *Purkett v. Elm*, 514 U.S. 765, 768 (1995)), aims to divert eyes from the State's burden of proof under step two to posit truthful, race-neutral rationale for its peremptory strikes.

In this second step, when the State has failed to posit truthful, race neutral rationale for striking the venire member, the trial court must conclude that the prosecution violated *Batson*. On the record at bar, the State failed to satisfy its burden in the second step and the state courts' resulting unreasonable application of the *Batson* line of authorities here necessitates relief.

But the *Batson* inquiry does not cease at this juncture. By disfiguring *Batson*'s three steps, Respondents seek to elide the trial court's error in the final, or third, step at the heart of the present matter. That final step presupposes that the prosecution has "articulate[d] a neutral explanation related to the particular case to be tried[,]" and entails "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. While on the present record the State's failing under *Batson*'s second step entitles Petitioner to relief, the state court's unreasonable application of the third step too necessitates relief from this Court.

### C. The District Attorney's Untruthful Reasons for his Strikes of Black Venire Members Betrays his Purposeful Discrimination.

Rather than address Petitioner's argument that the state supreme court unreasonably applied *Batson* with respect to its final step, Respondents recast that step, mischaracterizing it as "Pretext Determination." Doc. 212 at 14. *Batson* requires assessment of the trial court's determination of whether the prosecution's peremptory strikes manifest purposeful discrimination. It is correct that, at bottom, the burden of persuasion culminating in that third step is the defendant's (or petitioner's.) But while the analysis of pretext, and within it, consideration of pervasive disparate questioning, informs *Batson*'s third step in this case, the "duty" for the trial court and, in turn, its reviewing court, is a wider one, requiring a determination of whether "the defendant has established purposeful discrimination." *Batson*, 467 U.S. at 98. Doc. 208 at 12 n.5

In affirming Petitioner's trial judgment, the Mississippi Supreme Court unreasonably applied *Batson* by an analysis improperly constraining this third step in the inquiry to whether, after the State has proffered purported race-neutral rationale *and before the trial court has ruled*, the defendant has rebutted the proffer. *Pitchford v. State*, 45 So.3d 216, 227 (Miss. 2010) ("This Court has held that, '[i]f the defendant fails to rebut, the trial judge must base his [or her] decision on the reasons given by the State.'" (quoting *Berry v. State*, 802 So.2d 1033, 1037 (Miss. 2001)). With respect to whether purposeful discrimination has been established, the Constitution places no obligation on a defendant even to attempt to

rebut the State's proffered race-neutral reasons. Doc. 208 at 13 (quoting Justice Thomas's dissenting opinion *Miller-El v. Dretke*, 545 U.S. 240, 278).

As Presiding Judge Graves's dissenting opinion in *Pitchford* pointed out, the majority's reasoning grossly contravenes clearly established Supreme Court jurisprudence:

> Pitchford may rebut the State's evidence, but there is no requirement under *Batson* that Pitchford *must* then rebut the rebuttal before the trial court. Pursuant to *Batson*, once the State offered race-neutral reasons to rebut the prima facie showing, the trial court then made a determination that Pitchford had not established purposeful discrimination. This Court is reviewing the trial court's decision to determine whether it is clearly erroneous or contrary to the overwhelming weight of the evidence.

*Pitchford*, 45 So.3d at 267 (citing *Flowers v. State*, 947 So.2d 910, 917 (Miss. 2007) (quoted in Doc. 208 at 12 n.5).

In relation to this disfiguring of the clearly established constitutional law, closer review of the trial record reflects an even greater depth of the state supreme court's departure from *Batson*. With respect to each discrete peremptory strike challenge, the trial court preempted the defense's very ability to rebut, shutting down trial counsel's persistent efforts to that end with abrupt rulings in favor of the District Attorney rendered immediately upon the prosecutor's proffer of his explanations. Tr. 324-25, 325, 326, and 331.

### D. The District Attorney's Extensive History of Abusing Peremptories to Remove as Many Black Venire Members as Possible Is Extremely Relevant.

In Respondents' attempt to normalize the aberrant misconduct of this District Attorney, the Response characterizes as a "red herring" Petitioner's

discussion of *Flowers v. Mississippi,* 139 S. Ct. 2228, 2235 (2019), which, of course, reversed the Mississippi Supreme Court's affirmance on direct review of the District Attorney's use of peremptory strikes. Doc. 212 at 15. The Supreme Court characterized this opinion, as Respondents note (*id.*), "as simply enforce[ing] and reinforc[ing] *Batson*," *supra*, studiously underscoring that it broke no new ground in reaching its decision. Rather, *Flowers* provides the latest installment in the application of *Batson* and, as such, illuminates the present application of habeas corpus review of Petitioner's jury discrimination challenge.

Respondents entirely avoid the thrust of the present invocation of *Flowers*: "In *Flowers*, District Attorney Evans's history of abusing peremptories 'to remove as many black prospective jurors as possible' possessed the utmost relevance: 'We cannot ignore that history. We cannot take that history out of the case.' [139 S. Ct. ]at 2246." Doc. 208 at 10. As reflected in the present Motion, this District Attorney's practice of abusing peremptories was established long before the state supreme court opinion in *Pitchford*. *Pitchford*, 45 So.3d at 267 (Graves, P.J., dissenting) (citing *Flowers v. State*, 947 So.2d 910, 917 (Miss. 2007)). That record of performance was expressly relevant to the state courts' adjudication of *Batson* regarding the District Attorney's strikes and this Court must evaluate the state supreme court's application of *Batson* with contemplation of this long-established conduct in that domain.

### E. The Totality of the Pre-Trial Record Governs Assessment of State Court Decisions.

Respondents avoid the Motion's application of *Miller-El*, which reflected the primacy of the totality of the case's facts in the evaluation of a trial court's determinations. Doc. 208 at 12-13. Instead, the Response misrepresents Petitioner's use of *Miller-El* by asserting that it "did not clearly establish a *requirement* that a state court conduct a comparative juror analysis at all." Doc. 212 at 16. In no way does the Motion suggest that such analysis is necessary in any given *Batson* challenge. It is "the totality of the pretrial record," as Respondents quote, that governs assessment of the trial court's decision. This is the thrust of the Motion and when *Miller-El*'s teachings are applied to this case, it is apparent that the state supreme court unreasonably applied it, along with other leading precedents, in affirming the trial court's rulings.

### F. Mere Alignment of Fact Findings with the Record Is not Enough to Render them Reasonable Determinations.

Respondents bolster the proffered race-neutral reasons for each of the four strikes in question, rendering an analysis of the state courts' factual determinations divorced from the circumstances for assessment. As the Motion notes, the prosecution established in this trial a strike rate of 80% among the five Black venire members versus 8.5% among the 35 white venire members. From this context, taking the espoused race neutral grounds as such avoids the central factual question the treatment of each of the four Black venire members in question raises:

under the totality of the record, should the District Attorney's stated race-neutral reasons be considered truthful. *See Hernandez*, 500 U.S. at 363.

### III. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Petitioner with respect to his claim of purposeful jury discrimination in violation of the *Batson* line of cases. Respondents have cross-moved for partial summary judgment on this same claim. This claim is entirely record-based and derived from the totality of relevant facts at the time of the state courts' determinations. As such, it is amenable to summary adjudication in favor of either party because the inherent nature of this exclusively record-based claim contemplates no further development.

In contrast, further evidence of the prosecution's discriminatory intent in the use of its peremptories supplies grounds for an overlapping but separate claim for constitutional relief. Any summary adjudication under the present Motion thus would not foreclose the ultimate adjudication of Mr. Pitchford's pending jury discrimination claim founded upon both the trial record and evidence resulting from the Rule 6 discovery during these federal proceedings.

WHEREFORE, Petitioner respectfully requests the Court to grant summary judgment and the writ of habeas corpus, obviating the need for further litigation of his petition.

Respectfully submitted, this the 5th day of September, 2023,

*/s/ Joseph J. Perkovich*

JOSEPH J. PERKOVICH
Phillips Black, Inc.
PO Box 4544
New York, NY 10163-4544
(212) 400-1660

*/s/ J. Scott Gilbert*
J. SCOTT GILBERT
Watkins & Eager PLLC
The Emporium Building
400 East Capitol Street
Jackson, MS 39201
(601) 965-1922

*Counsel for Petitioner*, Terry Pitchford

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2023, the foregoing was served upon all counsel of record in this case via the ECF filing system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Joseph J. Perkovich*
JOSEPH J. PERKOVICH
Counsel for Petitioner, Terry Pitchford
