IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**TERRY PITCHFORD**                                                          **PETITIONER**

**V.**                                     **NO. 4:18-CV-00002-MPM**

**BURL CAIN, MDOC Commissioner; and**
**LYNN FITCH, Attorney General for the state of Mississippi**       **RESPONDENTS**

### MEMORANDUM OPINION AND ORDER

Petitioner Terry Pitchford, a state inmate under sentence of death, seeks habeas corpus relief under 28 U.S.C. § 2254. After filing his amended federal habeas petition, Pitchford moved for partial summary judgment as to his *Batson*[1] claim. In turn, Respondents moved for cross-summary judgment.[2] The parties have filed their respective responses and replies, and the matter is now ripe for resolution. Having reviewed the submissions and arguments of the parties, as well as the applicable authority, the Court finds that Pitchford's motion should be granted and, consequently, that his petition for a writ of habeas corpus should be granted *as to this claim*.

### Relevant Factual and Procedural Background

On the morning of November 7, 2004, Pitchford and a friend, Eric Bullins, went to the Crossroads Grocery store with the intention of robbery. *Pitchford v. State*, 45 So. 3d 216, 222 (Miss. 2010). The intended robbery, however, resulted in the murder of store owner Reuben Britt.

---

[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986).
[2] Respondents filed their motion for cross-summary judgment in the same document as their response to Petitioner's motion for partial summary judgment. *See* Doc. # 211. The Local Rules, however, provide that "[a] response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." L.U. Civ. R. 7(b)(3)(C). The Court will overlook this procedural defect this time for purposes of efficiency, but the parties are advised to follow the Local Rules going forward.

*Id.* Bullins, Pitchford's accomplice, shot Britt three times with a .22 caliber pistol, while Pitchford fired shots into the floor. *Id.*

On January 11, 2005, a grand jury in Grenada County, Mississippi, indicted nineteen-year-old Pitchford for capital murder, and the case proceeded to trial with jury selection beginning on February 6, 2006. *Id.* at 223. At the start of voir dire, the jury pool included 126 individuals: forty (40) black, eighty-four (84) white, one Hispanic, and one who did not provide race information. *Id.* The trial judge began by excusing certain jurors for statutory cause and other reasons unrelated to the case, without objection from either party. *Id.*

This left a panel of ninety-six (96), with thirty-five (35) black and sixty-one (61) white members. *Id.* Following voir dire by the attorneys, the trial judge, again without objection from either party, struck fifty-two (52) prospective jurors for cause and three others for undisclosed reasons, leaving a total of forty-one (41) venire members, of which thirty-six (36) were white and five were black. *Id.* Of note, thirty (30) black venire members were excused for cause primarily because of their views on the death penalty, leaving merely five black members in the jury pool. *See* Doc. # 207-1, at 150-153.

The attorneys were then permitted to exercise strikes "only on the twelve lowest-numbered members of the venire," and then, each time someone was stricken, "the next lowest-numbered juror joined the twelve potential jurors subject to preemptory strikes." *Id.* During this process, the State exercised seven strikes, while Pitchford used twelve, resulting in thirty-one (31) potential jurors subject to preemptory strikes. *Id.* Of these thirty-one, Pitchford struck twelve white members, leaving nineteen members subject to preemptory strikes by the State: five black and fourteen white. *Id.* The State exercised seven of the twelve strikes it was permitted, striking three whites and four blacks. *Id.*

2

Following the selection process, Pitchford's jury of fourteen (twelve jurors with two alternates) consisted of thirteen whites and one black. *Id.* at 226. The case proceeded to trial on February 8, 2006, at which the jury found Pitchford guilty of capital murder. *Id* at 223. Then, on February 9, 2006, during the penalty phase, the jury imposed a sentence of death by lethal injection. *Id.*

Through counsel, Pitchford filed a direct appeal challenging his conviction and sentence, arguing that the State discriminated on the basis of race in its preemptory strikes in violation of *Batson v. Kentucky*.[3] *Id.* at 224. The Mississippi Supreme Court affirmed Pitchford's conviction and sentence on June 24, 2010. *Id.* at 216. In its decision, the state supreme court rejected Pitchford's claim on the basis that he failed to rebut the prosecution's race-neutral reasons for its preemptory strikes of black venire members. *Id.* at 227.

Pitchford, through appointed counsel, filed an amended petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 in this Court on February 13, 2023. Doc. # 203. In his amended petition, Pitchford asserts twenty-six grounds for relief, including a *Batson* claim. *See Id.* at 18-35. Then on June 12, 2023, Pitchford moved for partial summary judgment on his *Batson* claim. Doc. #s 207, 208. On August 3, 2023, Respondents filed their response to Pitchford's motion along with a cross-motion for summary judgment. Doc. #s 211, 212. Pitchford filed his reply in support of his motion and response in opposition to Respondents' motion on September 5, 2023. Doc. # 215. The matter is now ripe for resolution.

## **Legal Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3] Pitchford raised seventeen issues on direct appeal, but the *Batson* claim is the only claim that will be discussed herein. *See Pitchford*, 45 So.3d at 224-260.

3

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke* 542 U.S. 274 (2004); *see also* Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts. Thus, "[i]f some aspect of the summary judgment process conflicts with the habeas process, then the habeas process controls." *See Ndudzi v. Castro*, 2020 WL 3317107 at *10 (W.D. Tex. June 18, 2020)(citations omitted).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs this case, a federal court cannot grant federal habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations "carry a presumption of correctness" such that, "to rebut them, the petitioner must present clear and convincing evidence to the contrary." *Smith*, 311 F.3d at 667 (citing 28 U.S.C. § 2254(e)(1)). To be sure, this "standard is demanding but not insatiable." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (granting writ on *Batson* grounds). Further, "[d]eference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

4

**Discussion**

Pitchford argues that the State used its preemptory strikes in a racially discriminatory manner. The Mississippi Supreme Court considered and ultimately rejected this same argument during Pitchford's direct appeal. In *Batson*, the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is entitled to secure." *Batson*, 476 U.S. at 86.

Offering guidance to courts addressing these claims, the Supreme Court has held:

> A defendant's *Batson* challenge to a preemptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a preemptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins*, 546 U.S. 333, 338 (2006)(internal citations omitted). A trial court's *Batson* finding is "'a pure issue of fact' that is accorded great deference and will not be overturned unless clearly erroneous." *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005); *see also Cockrell*, 537 U.S. at 340.

**I. Prima Facie Showing**

As a preliminary matter, the opponent of the strike (in this instance, the defendant Pitchford) must show that the use of preemptory challenges raised an inference that the prosecutor was purposefully excluding members of his race from serving on the jury. *Batson*, 476 U.S. at 96 (This holding has since been extended to members of any race. *See Powers v. Ohio*, 499 U.S. 400 (1991)). That the strikes disproportionately impact jurors of one race is insufficient; the defendant

must show a discriminatory intent motivated the strikes. *Hernandez v. New York*, 500 U.S. 352, 359-60 (1991). A defendant can make a prima facie showing by establishing either a pattern or practice of strikes against black jurors or by showing that jurors of different races were questioned differently. *Batson*, 476 U.S. at 97.

As briefly mentioned above, the State utilized four of its preemptory strikes to remove black members from the jury, tendering only one black juror. After the State struck the fourth black potential juror, Pitchford's counsel made the following objection:

> MS. STEINER (Pitchford's counsel): We would object on the grounds of *Batson versus Kentucky* that it appears there is a pattern of striking almost all of the available African-American jurors. They have tendered one African-American juror out of the five thus far – four that have thus far arisen on the venire. As we had noted previously, due to the process of cause challenges, particularly death qualification challenges, this is already a disproportionally white jury for the population of this county.
>
> And we make a Batson challenge. It appears to be a pattern of disproportionately challenging African-American jurors. And I would invite the Court's attention to the United States Supreme Court case. The most recent *Miller-El versus Dretke* case in which the United States Supreme Court on habeas actually reversed a conviction where the prosecutors had used most, though not all, of their strikes. They had left either one or two black jurors on the venire, but the United States Supreme Court nonetheless reversed.

Doc. # 207-1 at 157-159. Upon Pitchford's objection, the trial court immediately asked the State to provide race-neutral reasons for its preemptory strikes of the four black potential jurors. *Id.* As such, the trial court implicitly found that Pitchford made a prima facie showing that race was the basis for the strikes.

In addressing whether Pitchford had made a prima facie showing, the Mississippi Supreme Court considered an argument made by Pitchford *after* the trial court asked the State for race-neutral reasons as support for a prima facie showing—namely, the alleged racial makeup of Grenada County and the disparity between it and the venire. *Pitchford*, 45 So. 3d at 225-226. Specifically, the state appellate court noted Pitchford's argument that "in 2006, African-Americans

6

made up approximately forty percent of Grenada County's population." *Id.* at 225.  The state appellate court noted, however, that Pitchford presented no evidence of the racial makeup of Grenada County to the trial court.  *Id.*  But, "regardless of the racial makeup of Grenada County," the Mississippi Supreme Court was "persuaded that the record support[ed] the trial court's finding of a prima facie showing of discrimination."  *Id.*

The Mississippi Supreme Court's analysis on this point is a bit confusing.  As the argument about the racial makeup of the county was not made until *after* the *Batson* objection had been overruled and the jury selected, it could not have formed the basis of the trial court's finding that a prima facie showing had been made. More relevant to the inquiry is the argument made by Pitchford upon raising the objection:  that the State had struck four out of five black potential jurors, tendering only one black juror to serve.  Confusion aside, neither party disputes the state courts' conclusion(s) that Pitchford made a prima facie showing that race was the basis for the preemptory strikes at issue.  Moreover, the Court finds that the State's pattern of striking *all* but one black juror sufficiently demonstrated a prima facie showing under *Batson*.

### II. Race-Neutral Reasons

After Pitchford raised his *Batson* objection, the trial court promptly requested race-neutral reasons for each of the four strikes it used on black venire members.  *See* Doc. # 207-1 at 158-159. As the burden is always on the defendant to prove discrimination, the prosecution's proffered race-neutral explanation "need not be persuasive; it must only be based on some factor other than the juror's race."  *Walker v. Epps*, 2012 WL 1033467, at * 22 (S.D. Miss. Mar. 27, 2012) (citing *Hernandez*, 500 U.S. at 360).  At this juncture, the trial court need only consider "the facial validity of the prosecutor's explanation."  *Hernandez*, 500  U.S. at 360.  Thus, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

7

*Id.* The prosecutor, however, must do more than simply deny that he had a discriminatory motive. *Batson*, 476 U.S. at 98. Even if the prosecutor's reasons are "frivolous or utterly nonsensical," the analysis does not end, but merely proceeds to the third step. *Johnson v. California*, 545 U.S. 162,171 (2005) (citation omitted).

### *Linda Ruth Lee*

As to Ms. Lee, the State proffered as follows:

> S-2 is black female, juror number 30. She is the one that was 15 minutes late. She also, according to police officer, police captain, Carver Conley, has mental problems. They have had numerous calls to her house and said she obviously has mental problems.

Doc. # 207-1 at 159-160. Without further inquiry, the trial court responded "[t]hat would be race neutral as to – as to that juror." *Id.* at 160. The Mississippi Supreme Court found the allegation that Lee "obviously has mental problems" a sufficient race-neutral reason such that the trial court did not abuse its discretion. *Pitchford*, 45 So. 3d at 227.

### *Christopher Lamont Tillmon*

The State then provided the following explanation for its strike of Mr. Tillmon:

> S-3 is a black male, number 31, Christopher Lamont Tillmon. He has a brother that has been convicted of manslaughter. And considering that this is a murder case, I don't want anyone on the jury that has relatives convicted of similar offenses.

Doc. # 207-1 at 160. The trial court then questioned a bit further, asking the brother's name, to which the prosecutor responded that he did not "even remember his brother" but that, on the jury questionnaire, Tillmon "said that he had a brother convicted of manslaughter." *Id.* The trial court concluded "I find that to be race neutral." *Id.* The Mississippi Supreme Court noted that it had "recognized a juror's (or family member's) criminal history to be race-neutral reason for exercising a preemptory challenge" and found no error in the trial court's acceptance of the reason. *Pitchford*, 45 So. 3d at 227 (citations omitted).

8

*Patricia Ann Tidwell*

As to Tidwell, the State submitted the following reason:

S-4 is juror number 43, a black female, Patricia Anne Tidwell. Her brother, David Tidwell, was convicted in this court of sexual battery. And her brother is now charged in a shooting case that is a pending case here in Grenada. And also, according to police officers, she is a known drug user.

Doc. # 207-1 at 160. The trial court then expounded, "[d]uring voir dire, in fact, I made a notation on my notes about her being kin to this individual. I find that to be race neutral." *Id*. The Mississippi Supreme Court could not say that the trial judge abused his discretion is finding this proffered race-neutral reason acceptable. *Pitchford*, 45 So. 3d at 227.

*Carlos Ward*

Lastly, the State presented the following race-neutral explanation for striking Ward:

We have several reasons. One, he had no opinion on the death penalty. He has a two-year-old child. He has never married. He has numerous speeding violations that we are aware of. The reason that I do not want him as a juror is he is too closely related to the defendant. He is approximately the same age as the defendant. They both have never been married. In my opinion he will not be able to not be thinking about these issues, especially on the second phase. And I don't think he would be a good juror because of that.

Doc. # 207-1 at 160-161. The trial court did not probe further, finding the State's explanation "to be race neutral as well." *Id.* at 161. The Mississippi Supreme Court reasoned that it had previously "included an appendix of 'illustrative examples' of race-neutral reasons upheld by other courts which includes age and marital status" and found no error in the trial court's acceptance of this reason as race-neutral. *Pitchford*, 45 So. 3d at 226 (citation omitted).

The parties understandably spend little time addressing this step in their briefs as the explanations offered by the State were, *on their face*, race-neutral. The State averred that it struck Lee because she had mental problems; Tillmon because his brother had been convicted of manslaughter; Tidwell because her brother had a sexual battery conviction and pending charge

9

involving a shooting; and, lastly, Ward because he possessed too many similar characteristics with Pitchford. Whether the proffered reasons were true (factually accurate) or even the actual motives for the State's strikes matters not *at this stage*. A careful review of the record, even considering the totality of the circumstances, does not evince an unequivocal inherent discriminatory intent in the explanations proffered by the State. *See United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (1993) (quoting *Hernandez*, 476 U.S. at 360). Thus, the Court concludes there was no error in the state courts' acceptance of the State's race-neutral reasons for striking Lee, Tillmon, Tidwell and Ward. This, however, does not end the inquiry.

### III. Purposeful Discrimination

Once the prosecution articulates acceptable race-neutral reasons for its preemptory strikes, the trial court is tasked with determining whether the defendant has sustained his burden of proving purposeful discrimination. *See Batson*, 476 U.S. at 98. During this final step, Mississippi law requires the opponent of the strike to demonstrate that the State's articulated race-neutral reasons are mere pretext for discrimination. *See, e.g., Mack v. State*, 650 So.2d 1289, 1297 (1994) (holding that the defendant's failure to raise the argument of pretext before the trial court constitutes waiver of the claim). In assessing the proffered race-neutral reasons, Mississippi courts consider the following "five indicia of pretext":

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

*Lynch v. State*, 877 So.2d 1254, 1272 (Miss. 2004)(citations omitted). The Mississippi Supreme Court has further held that "[i]f the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State." *Berry v. State*, 802 So.2d 1033, 1037 (Miss. 2001).[4]

As detailed above, when Pitchford raised his *Batson* challenge, the trial court asked the prosecution for its race-neutral reasons for striking potential jurors Lee, Tillmon, Tidwell, and Ward. The State then provided reasons for striking those four individuals, all of which the trial court deemed race-neutral. The trial court then full-stop ended its *Batson* analysis. More specifically, after the State provided its justification for striking Ward, the trial court responded, "[t]he court finds that to be race neutral as well. So now we will go back and have the defense starting at 37." Doc. # 207-1 at 161. Rather than turning to Pitchford and allowing him the opportunity to rebut the reasons articulated by the State, the trial court immediately continued with the juror selection conference.

On direct appeal, Pitchford argued that some of the reasons articulated by the State for its strikes of the black potential jurors were also true of white potential jurors whom the State did not strike. *Pitchford*, 45 So.3d at 227. Pitchford further pointed out that the State struck four of five blacks on the panel, but only three of thirty-five whites on the panel. *Id.* Additionally, Pitchford noted that, although it had preemptory strikes available to use, it failed to strike white panel members who shared similar characteristics to some of the black members who were struck for cause. *Id.* Thus, Pitchford believed the "the totality of the circumstances" demonstrated that the State used its preemptory strikes in a discriminatory manner. *Id.*

---

[4] *See also Manning v. State,* 735 So.2d 323, 339 (Miss. 1999) (It is incumbent upon a defendant claiming that proffered reasons are pretextual to raise the argument before the trial court. The failure to do so constitutes waiver."); *Woodward v. State*, 726 So.2d 524, 533 (Miss. 1997) ("In the absence of an actual proffer of evidence by the defendant to rebut the State's neutral explanations, this Court may not reverse on this point.").

In its analysis, the Mississippi Supreme Court gave this step short shrift. The state appellate court reasoned, "[Pitchford] did not present these arguments to the trial court during the voir dire process or during post-trial motions." *Id.* The Mississippi Supreme Court then explained it could "not now fault the trial judge with failing to discern whether the State's race-neutral reasons were overcome by rebuttal evidence and argument never presented." *Id.* The state appellate court thus concluded that, because "Pitchford failed to provide any argument concerning pretext during the *Batson* hearing[,]" it "[would] not entertain those arguments now." *Id.* at 228.

The majority in *Pitchford* implicitly found that Pitchford waived any argument regarding pretext because, it found, he did not advance a pretext argument before the trial court. This Court views the record a bit differently. Although the trial court failed to provide Pitchford an opportunity to rebut the State's explanations at the time they were made, Pitchford did raise his *Batson* challenge again after jury selection had been completed. Just seconds after the trial court read aloud the names of those selected for jury service, the following bench conference exchange occurred:

> MS. STEINER: At some point the defense is going to want to reserve both its Batson objection and a straight for Tenth Amendment racial discrimination.
>
> THE COURT: You have already made it in the record so I am of the opinion it is in the record.
>
> MS. STEINER: I don't want to let the paneling of the jury go by without having those objections.
>
> THE COURT: I think you already made those, and they are clear in the record. For the reasons previously stated, first the Court finds there to be no – well, all the reasons were race neutral as to members that were struck by the district attorney's office. And so the Court finds there to be no Batson violation. . . .
>
> MS. STEINER: Allow us to state into the record there is one of 12 – of fourteen jurors, are non-white, whereas this county is approximately, what, 40 percent?
>
> MR. BAUM (Pitchford's counsel): The county is 40 percent black.

12

>THE COURT: I don't know about the racial makeup, but I will note for the record there is one regular member of the panel that is black, African-American race.
>
>MS. STEINER: And only one.
>
>THE COURT: Right. There is one period.
>
>MS. STEINER: Right. Thank you.

Doc. # 207-1 at 166-167. This exchange evinces an attempt by Pitchford's counsel to argue pretext that was thwarted, although likely unintentionally so, by the trial court's abrupt conclusion that there had been no *Batson* violation. But, even if the state appellate court disagreed with that view, at the very least it is clear that Pitchford wanted to make sure his *Batson* objection *in toto* was preserved for appeal.

At the time of Pitchford's trial, *Batson* was well-settled law that the trial court was bound to uphold and apply. Yet, it *seemingly* failed to conduct the third *Batson* inquiry. It bears repeating the following sequence of events: first, Pitchford raised his *Batson* challenge; then, the trial court implicitly found a prima facie showing had been made by requesting race-neutral reasons from the state; the State articulated its reasons for striking Lee, Tillmon, Tidwell and Ward; the trial court deemed all explanations as sufficiently race-neutral; and that was it. One could certainly argue that the trial court implicitly found that Pitchford failed to prove purposeful discrimination (the third *Batson* inquiry) when it later, *after* the jury was selected and announced, declared there to be no *Batson* violation. But this Court cannot ignore the notion that Pitchford was seemingly given no chance to rebut the State's explanations and prove purposeful discrimination.

As set forth above, the majority in *Pitchford* declined to address his arguments regarding pretext on appeal because the arguments were not presented to the trial court, essentially concluding Pitchford had waived the issue. There is no authority from the United States Supreme Court requiring a defendant to rebut the race-neutral reasons offered by the State. It is true that

13

Fifth Circuit precedent provides that when a defendant fails to object to the prosecutor's explanation, he acquiesces in the explanation and the reviewing court may accept the trial court's acceptance of the prosecutor's reason as race-neutral. *See Haynes v. Quarterman*, 526 F.3d 189, 200 (5th Cir. 2008)(court can accept prosecutor's race-neutral explanation if the explanation is facially valid and the defendant does not object). But Pitchford *did* object to the explanations provided when he raised the issue again and confirmed it was on the record. Perhaps Pitchford's counsel should have been more assertive, but the Court will not fault them for failing to present specific arguments on pretext when the trial court appeared to have been resolute in its brusque determination that no violation had occurred. Simply put, there was no waiver by Pitchford.

The Court finds Justice Graves' dissenting opinion in *Pitchford* persuasive. The majority declined to address Pitchford's arguments regarding pretext. Justice Graves, however, correctly determining that the issue was not waived, conducted a comprehensive pretext analysis. *See Pitchford*, 45 So.3d at 260-268.

The State struck Lee because she was fifteen minutes late, had "mental problems", and the police had made numerous calls to her house according to Captain Carver Conley. *See* Doc.# 207-1 at 159-160. Justice Graves noted that Conley was not called to testify nor did the State introduce any evidence as to Lee's alleged mental problems. *Pitchford*, 45 So.3d at 264. A potential juror's alleged mental health or police calls to their residence was never brought up as an issue prior to or during voir dire. *Id.* Further, the State did not individually voir dire Lee nor did it ask any specific questions related to these reasons. *Id.* As such, nothing *in the record* supported the State's race-neutral reasons for striking Lee. Moreover, Lee was late because she had no transportation and had to walk from her home to the courthouse. Doc. # 207-1 at 75. The State attempted to strike

her for cause on the basis that she was late, but the trial court declined, noting that "she is trying real hard to be here and fulfill her civic duty as a juror." *Id.* at 153.

The State struck Tillmon because he revealed on his jury questionnaire that his brother had been convicted of manslaughter. Doc. # 207-1 at 160. Tillmon, however, also indicated that he was an employed college graduate, previously worked at a correctional facility, and strongly favored the death penalty. *Pitchford*, 45 So.3d at 265. The State failed to voir dire Tillmon regarding the disclosure about this brother. *Id.* As to Tidwell, the State struck her because her brother had been convicted of sexual battery and had a pending charge in a shooting case, and because she was allegedly a known drug user. *Id.* No evidence was presented as to her brother being charged in a shooting case nor as to her being a known drug user. *Id.* Further, the State did not individually voir dire her nor ask any specific questions regarding these reasons. *Id.*

Moreover, white venire members with criminal convictions were tendered without challenge by the State. *Id.* Pitchford names two similarly-situated white jurors who were not stricken. Doc. # 208 at 20. One such venire member had disclosed that his uncle was a convicted felon (crime undisclosed), and the other had a son and stepson both convicted of felonies, burglary and forgery, in particular. *Id.* Respondents contend that the nature of the crimes committed by the juror's family members differ greatly and that accounts for the reason Tillmon was struck but the others were tendered. *See* Doc. # 212 at 21. While that may be true as to the juror who disclosed family members' burglary and forgery convictions, the other juror did not disclose the nature of his uncle's conviction. Yet, the State chose not to voir dire that juror as to the nature of the crime to be certain it was not similar in nature to the crime of which Pitchford was charged.

15

As to Ward, the State posited that his circumstances were too similar to that of Pitchford: he had a young child; he had never been married; and he was approximately the same age as Pitchford. The State also opined that Ward expressed no opinion on the death penalty and had a number of speeding violations. As with the three potential jurors above, the State did not individually voir dire Ward as to these stated reasons. *Pitchford*, 45 So.3d at 266. To the extent that a history of speeding violations is relevant, which the Court finds unlikely, the juror questionnaire included no questions about speeding violations and the State otherwise presented no evidence of such. *See id.* Further, nothing in the record indicates that the State sought information about traffic violations on other jurors. *Id.* The Court also notes Pitchford cites a number of potential white jurors who either had young children, were unmarried, or were of a similar age. Doc. # 208 at 16. He further points to a number of white potential jurors who shared more than one of these identified traits. *Id.* at 17. Respondents make much of the fact that those identified by Pitchford did not possess *all* of the identified characteristics. Pitchford, however, "is not required to identify an *identical* white juror for the side-by-side comparison to be suggestive of discriminatory intent. *Flowers v. Mississippi*, 588 U.S. ---, 139 S.Ct. 2228, 2249 (2019) (citing *Miller-El II*, 545 U.S. at 241, n. 6)(emphasis in original).

The Court makes no finding as to whether it ultimately agrees with Justice Graves' analysis as to each juror stricken. The Court does, however, agree that *Batson* requires that the analysis be performed. In fact, there can be no question that such an analysis must be completed prior to concluding that *Batson* has not been violated. Simply put, no state court—whether it be the majority in the Mississippi Supreme Court or the trial court—conducted a full three-step *Batson* inquiry on the State's use of its preemptory strikes of Lee, Tillmon, Tidwell and Ward.

The trial court, seemingly eager to proceed to the case itself, quickly deemed the reasons as race-neutral and moved on. The trial court's actions, perhaps understandable (and relatable to this Court), are error, nonetheless. This is equally true of the majority's declination to address the merits of Pitchford's arguments regarding pretext on appeal. To be sure, even if Pitchford had waived the issue, which the Court finds he did not, the Fifth Circuit has suggested that a defendant's failure to rebut the State's race-neutral reasons does not constitute waiver of a comparative analysis in capital cases. *See Reed v. Quarterman*, 555 F.3d 364, 372-75 (5th Cir. 2009). Thus, at a bare minimum, the Mississippi Supreme Court should have performed such an analysis, and its failure to do so was erroneous.

The Court now briefly addresses the Curtis Flowers case history, and Pitchford's reliance on it. In 1996, Curtis Flowers allegedly murdered four people in Winona, Mississippi. *Flowers v. Mississippi*, 588 U.S. ____, 139 S.Ct. 2228, 2234 (2019). Flowers was tried six separate times before a jury for murder; and each of those times, he was prosecuted by District Attorney Doug Evans, the same prosecutor in Pitchford's case. *Id.* Flowers was convicted in each of the first three trials, but the Mississippi Supreme Court reversed each conviction. *Id.* at 2235. Those convictions were reversed for the following reasons: the first due to "numerous instances of prosecutorial misconduct", *see Flowers v. State*, 773 So.2d 309, 327 (2000); the second for prosecutorial misconduct (of note, the trial court found a *Batson* violation when the prosecutor struck a black juror and seated that juror); and third, because the prosecutor had discriminated against black prospective jurors during jury selection in contravention of *Batson*, *see Flowers v. State,* 947 So.2d 910, 935 (2007). *Id.*

During Flowers' third trial, the prosecutor exercised all fifteen of his preemptory strikes on black venire members. *Flowers*, 947 So.2d at 935. One black juror was seated *but* that was after

17

the State had utilized all of its allotted preemptory strikes. *Id.* In reversing Flowers' third conviction, the Mississippi Supreme Court determined that the circumstances "present[ed] [it] with as strong a prima facie case of racial discrimination as we have ever seen in the context of a *Batson* challenge." *Id.* It further concluded that "the State engaged in racially discriminatory practices during the jury selection process" and the case "evince[d] an effort by the State to exclude African Americans from jury service." *Id.* at 937, 939.

Flowers' fourth and fifth trials ended in mistrials due to hung juries. *Flowers*, 139 S.Ct. at 2235. Flowers was convicted in his sixth, and final, trial. *Id.* During that trial, the prosecutor struck five out of six potential jurors, leaving only one black juror to serve. *Id.* The Mississippi Supreme Court rejected Flowers' *Batson* challenge on appeal. *See Flowers v. State*, 158 So.3d 1009 (2014). The United States Supreme Court, however, granted certiorari, reversed, and remanded on *Batson* grounds. *Flowers*, 139 S.Ct. at 2251.

In reversing the state appellate court, the Supreme Court looked to the history of the apparent discriminatory practices by the State in its prosecution of Flowers, as well as the circumstances of the sixth trial itself. *Id.* "In the six trials combined, the State struck 41 of 42 black prospective jurors it could have struck." *Id.* The State struck all but one black juror in the sixth trial, thus accepting one black juror, even though it had more preemptory strikes available. *Id.* at 2246. The Supreme Court reasoned that it had previously, in another case, "skeptically viewed the State's decision to accept one black juror, explaining that a prosecutor might do so in an attempt to obscure the otherwise consistent pattern of opposition to seating black jurors." *Id.* (citing *Miller-El II*, 545 U.S. at 250) (internal quotations omitted).

Pitchford relies heavily on *Flowers* in arguing the state courts erred in finding no *Batson* violation. At the time of Pitchford's trial, the State had brought Flowers to trial three times, but

only one of those times resulted in a reversal on *Batson* grounds, and that reversal did not come until *after* Pitchford's trial. *See Flowers*, 947 So.2d 910. Thus, at the time of Pitchford's trial, the troubling case history as set forth above by the same district attorney in the same judicial district did not exist as we know it today. Yet, by the time Pitchford's appeal, including his *Batson* argument, made it to the Mississippi Supreme Court, the history in *Flowers*—the reversal on *Batson* grounds after the third trial in particular—was undoubtedly well-known. *See Pitchford*, 45 So.3d 216. As such, the Court believes the *Flowers* case was, at the very least, informative, and should have been examined in the state appellate court's consideration of Pitchford's *Batson* argument. To be clear, the Court *does* not find that the *Flowers* case was dispositive of the issue. The Court merely believes that it should have been included in a "totality of the circumstances" analysis of the issue. *See Chamberlin v. Fisher*, 885 F.3d 832, 843 (5th Cir.2018) (citing *Batson*, *Miller-El II*, and *Snyder v. Louisiana*, 552 U.S. 472 (2008), and noting that the "totality of the circumstances" must be considered in analyzing a *Batson* claim).

In sum, the Court believes that the state courts' rejection of Pitchford's *Batson* claim was contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C.§ 2254(d)(1) & (2). Thus, the Court finds that Pitchford has demonstrated that he is entitled to federal habeas relief on his *Batson* claim.

## Conclusion

Based on the foregoing discussion, the Court finds that Pitchford's motion [207] for partial summary judgment should be **GRANTED**, and that Respondents' cross-motion [211] for partial summary judgment should be **DENIED**. Accordingly, Pitchford's petition for a writ of habeas corpus *as to this claim* is **GRANTED**. Pitchford's capital murder conviction and death sentence are hereby vacated, and the matter is remanded to the State of Mississippi for further

proceedings not inconsistent with this opinion. The State of Mississippi must afford Pitchford a new trial within 180 days of the date of this order, otherwise it must release Pitchford from custody.

**SO ORDERED,** this the 12th day December, 2023.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI